IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| STEVEN A. ARMSTRONG and | * | CHAPTER 7 |
| NANSI A. ARMSTRONG, | * | |
|     Debtors | * | |
| | * | CASE NO. 1:07-bk-01917MDF |
| NANSI A. ARMSTRONG, | * | |
|     Plaintiff | * | |
| | * | |
|     vs. | * | ADV. NO. 1:07-ap-00179 |
| | * | |
| ACCESS GROUP; GREAT LAKES | * | |
| HIGHER EDUCATION; KY HIGHER | * | |
| EDUCATION; MICHIGAN | * | |
| GUARANTY AGENCY; | * | |
| EDUCATIONAL CREDIT | * | |
| MANAGEMENT CORPORATION; | * | |
| STUDENT LOAN MARKETING | * | |
| ASSOCIATION; and THOMAS M. | * | |
| COOLEY LAW SCHOOL, | * | |
|     Defendant | * | |

**OPINION**

Before the Court are the motions of Educational Credit Management Corporation ("ECMC"), Michigan Guaranty Agency ("MGA") and Student Loan Marketing Association ("Sallie Mae") (collectively "Movants") for summary judgment on the adversary complaint of Nansi Armstrong ("Debtor"), who seeks a determination that her student loans are dischargeable under 11 U.S.C. §523(a)(8). For the reasons discussed below, the motions for summary judgment will be granted.

**Procedural History**

On December 11, 2002, Debtor and her husband, Steven A. Armstrong, filed a voluntary petition under chapter 7 of the Bankruptcy Code in the Western District of Michigan. Debtor and her husband received a discharge on March 26, 2003, and the case was closed on April 22, 2003.

Beginning in 2006, Debtor filed several motions with the Michigan court requesting that her case be reopened and transferred to the Middle District of Pennsylvania so she could request a hardship discharge of her student loans. Eventually, the Michigan court granted the motion, transferring the case on June 22, 2007.

On December 27, 2007, Debtor filed the within *pro se* Complaint, which lists eight defendants in the caption. The allegations of the body of the Complaint, however, are not congruent with the caption. To highlight these differences, listed below are the eight defendants named in the caption, Sallie Mae[1] and the amounts Debtor states that each are owed in Paragraph 5 of the Complaint.

| Creditor | Amount |
|---|---|
| Access Group | $45,512.00 |
| Great Lakes Higher Education | $11,609.00 |
| KY Higher Education | $41,953.00 |
| Student Loan Marketing Association | $41,193.00 |
| Thomas M. Cooley Law School | $ 1,748.00 |
| Michigan Guaranty Agency | $48,577.00 |
| American Education Services | unknown |
| Pennsylvania Higher Education Assistance Agency | $19,831.00 |
| Sallie Mae | $17,125.00 |

---

[1]Sallie Mae is named in the body of the Complaint, but is not listed as a defendant in the caption. The Court takes judicial notice that Sallie Mae is an acronym for SLM Corporation, which was created in 1972 as the Student Loan Marketing Association. *See* http://www.salliemae.com/about/.

Sallie Mae filed an Affidavit in this case indicating that it holds a claim against Debtor in the principal amount of $8,428.58.[2] American Education Services ("AES") is an unincorporated division of the Pennsylvania Higher Education Assistance Agency ("PHEAA"). On March 19, 2008, an order was entered granting the motion of ECMC to substitute itself for defendants AES and PHEAA. ECMC filed an affidavit indicating that it holds a claim against Debtor in the principal amount of $19,834.40. MGA filed an affidavit indicating that it holds a claim against Debtor in the principal amount of $48,578.03. Thomas M. Cooley Law School, KY Higher Education, Great Lakes Higher Education ("Non-answering Defendants") did not respond to the Complaint.[3] Thus, the record does not disclose the amounts of the student loan claims, if any, that may be held by the Non-answering Defendants.

Sallie Mae, ECMC and MGA each filed a motion for summary judgment asserting that Debtor could not prove that repayment of the loans would create an undue hardship for her as required by 11 U.S.C. § 523(a)(8). Debtor answered the motions for summary judgment filed by Sallie Mae and ECMC, but did not respond to the motion filed by MGA. Briefs have been filed, and the matter is ready for decision.[4]

---

[2] The Affidavit indicates that as of January 17, 2008, the total balance on the claim including unpaid interest was $11,248.37.

[3] Debtor failed to certify that she had served the summonses in the adversary case. Therefore, the record does not reveal whether the Non-answering Defendants were ever properly served with notice of the instant case.

[4] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(I) and (O). This Opinion constitutes the findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052.

## Factual Findings

Debtor is thirty (30) years old and resides in Steelton, Pennsylvania with her three children, all of whom were under the age of six at the time of trial on this matter. (Dep. 6). As of May 2008, Debtor was separated from her husband, Steven A. Armstrong ("Armstrong"). (Dep. 6). Debtor is employed by a law firm as a secretary/paralegal at an annual salary of approximately $31,000.00. (Dep. 34, 36). Her gross monthly income is approximately $2,560.00 from which she nets approximately $1,950.00. (Sallie Mae Interrog. 15). She contributes $76.80 per month to a 401(k) account. (Sallie Mae Interrog. 15). Debtor receives state assistance payments or vouchers for food, home heating, and daycare expenses. (Dep. 37 - 40).

Debtor graduated high school in 1995. (Dep. 9). She obtained a bachelor's degree in criminal justice from The Pennsylvania State University in 1999. In 2000, Debtor moved to Michigan in order to attend the Thomas M. Cooley School of Law ("TMC"). (Dep. 12). She attended approximately three semesters at TMC, but due to academic and personal difficulties did not complete her degree. (Dep. 13 - 16).

Debtor and her husband were married on September 11, 2001. (Dep. 18). They separated sometime in mid-2007. (Dep. 6). Armstrong's employment history is spotty, and he pays neither spousal nor child support to Debtor. (Dep. 20-25, 64). Debtor has chosen not to pursue Armstrong for child support.

Debtor estimates her current monthly expenses to include the following. (Sallie Mae Interrog. 14).

| | |
|---|---|
| Rent | $650.00 |
| Car | $450.00 |

4

| | |
|---|---|
| Cable | $ 50.00 |
| Cell | $ 80.00 |
| Utilities[5] | $420.00 |
| Day care | $148.00 |
| Insurances | $ 97.00 |
| Gasoline | $200.00 |
| TOTAL | $2,045.00 |

Debtor is indebted to MGA in an amount of $48,578.03 (principal only) for loans that qualify as "student loans" under 11 U.S.C. § 523(a)(8). (Complaint para. 5(f); MGA Affidavit in Support of Motion for Summary Judgment, ¶ 3). She was scheduled to commence monthly payments of $464.00 to MGA on April 2, 2003. (MGA Affidavit). Upon Debtor's request made on or about August 28, 2003, MGA agreed to forbear collection of payments on the loan for the twelve months commencing on May 15, 2003 and ending on May 14, 2004. (MGA Affidavit). Upon Debtor's request made on or about October 13, 2004, MGA agreed to forbear collection of payments on the loan for the eleven months commencing on May 15, 2004 and ending on April 15, 2005. (MGA Affidavit).

Debtor is indebted to ECMC in an amount of $19,834.40 (principal only) for loans that qualify as "student loans" under 11 U.S.C. § 523(a)(8). (Complaint para. 5(g) and (h); ECMC Affidavit, ¶ 4).

Debtor is indebted to Sallie Mae in an amount of approximately $8,428.58 (principal only) for loans that qualify as "student loans" under 11 U.S.C. § 523(a)(8). (Complaint para. 5(d); Sallie Mae Statement of Uncontested Material Facts, ¶ 3). She was scheduled to commence monthly payments of $65.49 to Sallie Mae on April 24, 2003. Upon Debtor's request made on or

---

[5]This figure includes natural gas, electricity, home heating oil, telephone service, and water, sewer and trash service.

about July 14, 2003, Sallie Mae agreed to forbear collection of payments on the loan for the six months commencing on April 24, 2003 and ending on October 24, 2003. (Sallie Mae Affidavit).

Debtor received a Federal tax refund of $5,864.00 for tax year 2007 (Dep. 66); a refund of $6,617.00 for tax year 2006 (Dep. 67 - 68); a refund of $4,836.00 for tax year 2005 (Dep. 69); and a refund of $5,681.00 for tax year 2004 (Dep. 69). Although she has received substantial refunds the past four years, she has not dedicated any portion of these funds to repaying her student loan debts. (Dep. 66 -67). In fact, Debtor has never made a payment on any of her student loans from any source. (Dep. 98).

In the fall of 2004, Debtor and Armstrong purchased a 2004 Pontiac Montana for approximately $36,000.00 with a monthly payment of $450.00. (Dep. 42). Debtor currently has possession of the Montana. (Dep. 42).

On numerous occasions between January 2007 and February 2008, Debtor made purchases for goods or services that were not necessary for her or her family's basic subsistence. For example, in January 2007, Debtor purchased a 52-inch projection screen television for $947.64. (Dep. 76). On April 18, 2007, during a visit to the Washington Redskins Hall of Fame, she spent $188.00 to purchase a souvenir glass set and helmet. (Dep. 84). On February 11, 2008, she purchased bunk beds for her children for $636.00. On that same date, she spent $31.80 for perfume, $58.30 at a store called "Belts and Buckles," and $77.03 at various restaurants and fast food establishments. All told, Debtor made consumer purchases and cash withdrawals on February 11, 2008 totaling $620.68. On at least seven occasions in 2007, Debtor expended $50.00 or more on restaurant meals for herself, her children and others. (Dep. 78 - 91). On at least six occasions in that same year, Debtor spent at least $25.00 on manicures.

6

## Discussion

### A. Standards for summary judgment

A court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts" such that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ .P. 56(c), incorporated by Fed. R. Bankr. P. 7056. In deciding a motion for summary judgment, the Court must view the facts "in a light most favorable to the non-moving party." *United States v. Isley*, 356 F. Supp.2d 391 (D. N.J. 2004).

A movant for summary judgment bears the initial burden of establishing a prima facie case by "identifying those portions of the record which demonstrate the absence of a genuine issue of material fact." *In re Fabrizio*, 369 B.R. 238, 242 (Bankr. W.D. Pa. 2007), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once a prima facie case is established, the non-moving party must "respond with contrary evidence and do more than raise some metaphysical doubt as to material facts. . . ." *Fabrizio*, 369 B.R. at 242, *citing Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir.1998). After a prima facie case for summary judgment has been made, "[n]o issue for trial exists . . . unless the non-moving party can adduce sufficient evidence favoring it on the disputed factual issue such that a reasonable jury could only return a verdict in its favor." *Fabrizio*, 369 B.R. at 242, *citing Celotex*, 477 U.S. at 322. Even if a genuine factual dispute is shown to exist, it will not defeat an otherwise properly supported motion for summary judgment if the factual dispute is not material. *In re Allegheny Health, Educ. and Research Foundation*, 321 B.R. 776, 789 (Bankr. W.D. Pa. 2005).

### B. Dischargeability under 11 U.S.C. § 523(a)(8)

The Bankruptcy Code excepts from discharge any debt insured or guaranteed by a governmental unit as an educational benefit unless the debtor can show that repayment of the debt will impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. §523(a)(8). The statute does not define the term "undue hardship," so the courts must review the facts of each case to determine whether the circumstances justify discharge of the debt. *In re Boston,* 119 B.R. 162, 164 (Bankr. W.D. Ark. 1990). Despite the fact-intensive nature of the "undue hardship" inquiry, summary judgment may nonetheless be appropriate where the relevant facts are uncontroverted, and no questions remain on the controlling legal issues. *In re Rice*, 78 F.3d 1144, 1148 (6th Cir. 1996).

In *In re Faish*, 72 F.3d 298 (3d Cir 1995), the Third Circuit adopted the three-pronged test set forth in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987) to determine whether forced repayment of student loan debt will create "undue hardship" for a debtor. Under this test, "undue hardship" is dependent upon three factors:

> (1) [whether] the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans;
>
> (2) [whether] additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and
>
> (3) [whether] the debtor has made good faith efforts to repay the loans.

*Faish,* 72 F.3d at 304-05 (quoting *In re Brunner*, 831 F.2d at 396).

A debtor must prove all three elements of the test by a preponderance of the evidence in order to prevail in an action under § 523(a)(8). *Faish,* 72 F.3d at 306. If any of the three prongs are not met, the student loan cannot be discharged. *Id.* "Moreover, this test must be strictly construed:

equitable concerns or other extraneous factors not contemplated by the test may not be imported into the analysis of 'undue hardship.'" *In re Brightful*, 267 F.3d 324, 328 (3d Cir. 2001)(citation omitted).

In *Faish*, the debtor was a single mother earning $27,000 a year with student loans of approximately $32,000.00. She did not own a car, she rented a home in a low-income neighborhood, and she suffered from Crohn's disease and other ailments. The Third Circuit observed that notwithstanding her personal difficulties and health challenges, with some lifestyle modifications Faish would be able to repay her student loan. Similarly, in *Brightful*, the school loans of the debtor, a single mother with emotional problems who lived with her sister and earned $8500 the year she declared bankruptcy, were not discharged because she could not prove "a total incapacity . . . in the future to pay [her]debts for reasons not within [her] control." *Id.* (citing *In re Faish*, 72 F.3d at 307).

The standard a debtor must meet to obtain a hardship discharge of a student loan is high and is difficult to meet, as illustrated by the *Faish* and *Brightful* cases. For Debtor to discharge her loans I must find that there are disputed issues of fact that bear on whether she can meet all three prongs of the *Faish* test . If the Movants have demonstrated that Debtor cannot prevail on the undisputed facts, then the motion for summary judgment must be granted. Because Debtor so clearly is unable to meet the third prong of the test, I will discuss it first.

1. **Were good faith efforts made by Debtor to repay her student loan obligations?**

A debtor seeking to discharge a student loan on the grounds of undue hardship must demonstrate that a good faith effort to repay the loan was made between the time the loan became due and the date the petition was filed. *Pelliccia v. US Department of Education*, 67 Fed. Appx. 88, 90 (3d Cir. 2003) (non-precedential). In the within case, Debtor's own testimony demonstrates that

9

she cannot meet this test. She bluntly stated that she "[hasn't] made any payments toward [her] student loans." (Dep. 98).

When inquiring whether a debtor has made a good faith effort to repay a student loan, a bankruptcy court must consider two factors, the first of which is "whether the debtor incurred substantial expenses beyond those required to pay for basic necessities. . . ." *Id*. As the Factual Findings indicate, Debtor made many discretionary purchases while refusing to make a single payment on her student loans. In calendar year 2007 alone, she expended approximately $331.00 for manicures. She incurred charges in that same period totaling over $1,472.00 for her family and friends to dine out. (Dep. 78 - 91). Debtor spent at least $868.00 in 2007 for non-essential items such as video games, fireworks, movies, music and sporting goods. Had these expenditures been made at a time when Debtor was also attempting to make some payments on her educational loans, they might be overlooked. However, as her deposition testimony demonstrated, Debtor made a conscious decision to ignore her student loan debts in favor of making consumer purchases for the benefit of herself and her children.[6] A debtor seeking to discharge student loans "need not live in abject poverty, but a debtor is expected to do some belt-tightening and forego amenities to which he or she may have become accustomed." *In re Lowe*, 321 B.R. 852, 858 (Bankr. N.D. Ohio 2004).

The second factor for determining whether a debtor has made a good faith effort to repay her student loans is "whether the debtor made efforts to restructure his loan before filing his petition in

---

[6] In her brief, Debtor further stated that she believes that most of these expenditures were "necessary" because she "does not want her children to be deprived of the same sport activities, movies, video games, etc. that their own friends and relatives enjoy . . . ." (Response to ECMC's Motion for Summary Judgment, p. 3). While Debtor's desire to provide for her children's entertainment is understandable, § 523(a)(8) of the Bankruptcy Code does not permit a court to consider whether a debtor is able to maintain a standard of living equal to that of her friends and relatives.

bankruptcy." *Pellicacia*, 67 Fed. Appx at 90. At a number of points in her deposition, Debtor blithely admitted that she has made no efforts whatsoever to repay her student loans since the date that they became due. (Dep. 66- 72, 98).[7]

In addition, Debtor admitted that she was not aware of and never sought out alternate repayment options, such as the William D. Ford Federal Direct Consolidation Program, prior to seeking a discharge of the loans through bankruptcy.[8] A debtor's failure to explore alternative payment options prior to seeking a discharge has been found to be evidence of the debtor's failure to satisfy the third prong of the test. *See In re Tirch*, 409 F.3d 677 (6th Cir. 2005) (debtor failed to establish good faith effort to repay where she was aware of but declined to apply to Ford Program). *Accord, In re Lykoudis*, 381 B.R. 349 (Bankr. M.D. Fla. 2007) (debtor's failure to pursue alternative repayment program such as Ford is not per se indicator of bad faith but is evidence of debtor's lack of intent to repay). *But see In re Wilkinson-Bell*, 2007 WL 1021969, *5 (Bankr.C.D.Ill.) (to hold

---

[7]When debtor was questioned about how she could justify some of her expenditures while asking to be discharged of her student loan obligations, part of Debtor's answer was that she "just want[s] to be able to enjoy life too and not just sit there and have to pay bills and then be empty pocketed every time I get paid." (Dep. 96 - 97). Her testimony generally belied a serious misconception regarding the nature of the student loan guarantee program. She expressed a willingness to repay her loans but only "if they can get reduced or minimized to where I pay a certain amount and it's not over an extensive period of time." (Dep. 95). Again, as discussed above, Debtor made numerous and substantial expenditures for luxury or non-essential items even while she completely disregarded her student loan obligations, thus demonstrating the absence of a good faith effort to repay.

[8]The Ford Program permits a student loan debtor to pay twenty percent of the difference between his adjusted gross income and the poverty level for his family size, or the amount the debtor would pay if the debt were repaid in twelve years, whichever is less. Under the program, the borrower's monthly repayment amount is adjusted each year to reflect any changes in these factors. The borrower's repayments may also be adjusted during the year based on special circumstances. See 34 C.F.R. § 685.209(c)(3). At the end of the twenty-five year payment period, any remaining loan balance would be cancelled by the Secretary of Education. *In re Tirch*, 409 F.3d 677, 682 (6th Cir. 2005)

that debtors must participate in the Ford program, if eligible, would be no more than the Court abdicating its responsibility to determine the dischargeability of a student loan.)

Finally, Debtor filed her bankruptcy case in Michigan within seven months of filling out her final student loan application, thus further indicating a lack of effort at repayment.[9] *See In re Young*, 225 B.R. 312, 316 (Bankr. E.D. Pa. 1998) (expiration of a "significant time" between loan applications and bankruptcy filing may be evidence of effort to repay). *See also Brunner*, 831 F.3d 397 (debtor filed bankruptcy petition in the same month as her student loan payments first became due).

For these reasons, I find no genuine issue of material fact regarding Debtor's failure to make an effort to pay her student loans. On that basis alone, her case for nondischargeability must be dismissed.

> **2. Can Debtor maintain a minimal standard of living while paying her student loans?**

Under the first prong of the test, Debtor must establish that she will not be able to "maintain, based on current income and expenses, a 'minimal' standard of living" if required to repay the loans. *Faish*, 72 F.3d at 306. The court examines the debtor's "current income and expenses to see if payment of the loan would cause her standard of living to fall below that minimally necessary." *In re Birrane,* 287 B.R. 490, 494 (9th Cir. BAP 2002). "To satisfy this prong, the debtor must do more than show her finances are tight." *Educational Credit Management Corp. v. DeGroot*, 339 B.R. 201, 207 (D. Or. 2006) (citations omitted). "[T]he proper inquiry is whether it would be 'unconscionable' to require the debtor to take any available steps to earn more income or to reduce her expenses." *In re Faish*, 72 F.3d at 307 (citation and internal quotation omitted). "An option is not

---

[9] The application, completed on May 2, 2002, requested $11,000.00.

'unconscionable' simply because it may be disruptive, unpleasant, undesirable, or painful. Instead, to be 'unconscionable' an option must be 'shockingly unfair, harsh, or unjust' or 'outrageous. . . .'" *Matthews v. Pineo*, 19 F.3d 121, 124 (3d Cir. 1994).

On the income side of the ledger, the court must consider whether the debtor is "making a strenuous effort to maximize her personal income within the practical limitations of her vocational profile." *In re Healey,* 161 B.R. 389, 394 (E.D. Mich. 1993) (internal quotations and citation omitted). For example,

> [i]f the market does not currently value particular skills (e.g. teaching skills) highly enough to provide sufficient well-paying jobs to allow the debtor a place in that vocation, then she may be forced through circumstances to fall back on other job skills even though to her they may be not quite as sophisticated, refined or aesthetically pleasing.

*Id.* 161 B.R. at 395.

The debtor in *Healey* had a master's degree in teaching but earned less than $11,000 a year in that profession. Her salary had been higher when she worked as a secretary before she obtained her teaching degree. The court held the debtor had not shown she had maximized her income because she did not refute the evidence that she had the capacity to earn a higher salary through a different occupation. *Id.*

In the instant case, Debtor has a bachelor's degree in criminal justice and some credits toward a law degree. She is the sole care-giver for three small children. She is currently employed as a secretary/paralegal in a small law practice, where her net monthly income is approximately $1,950.00. In response to the motion for summary judgment, she proffered no evidence that she had sought but failed to find more remunerative employment. Regardless, I cannot conclude that she has failed to take maximum advantage of her earning capacity through her current employment. The salary that she earns appears reasonable for someone of her age and educational credentials residing

13

in the Middle District of Pennsylvania. Having sole responsibility for three children, the Court cannot expect her to take a second job. *See In re Ledbetter,* 254 B.R. 714 (Bankr. S.D. Ohio 2000) (debtor could repay loan without undue hardship when, as single individual with no dependents, he had ability to work a few hours per week at second job).

Nonetheless, Debtor has blatantly failed to maximize her income in at least one respect. She collects no child support from the father of her three children and has made no attempts to do so because she does not "have time to be bothered with it." (Dep. 65). While Debtor is correct that such payments would be for the benefit of her children and not for payment to her student loan creditors, contributions to the support of her children would free up her earnings to be used for repayment of her loans. *See In re Matthews-Hamad*, 377 B.R. 415 (Bankr. M.D. Fl. 2007) (debtor did not show maximization of income where she had failed to pursue ex-husband for past-due child support).

Next, I must scrutinize Debtor's monthly expenses of approximately $2,095.00. A minimal standard of living generally includes the basic necessities, such as food, clothing, housing and medical treatment. *In re Nary,* 253 B.R. 752, 763 (N.D. Tex 2000); *In re Ritchie*, 254 B.R. 913, 918 (Bankr. D. Idaho 2000). A minimal standard of living does not accommodate "luxury type expenses." *In re DeGroot*, 339 B.R. at 209. "[A]n unreasonable amount spent on an otherwise reasonable expense can show the debtor is able to maintain a minimal standard of living in spite of loan payments." *Id.*

As indicated above, Debtor's monthly expenses exceed her monthly income by at least $100.00. Moreover, the expenses listed above do not include allowances for such basic necessities as food and clothing. However, Debtor expends approximately 20% of her monthly income on a vehicle that she purchased in 2004 for $36,000.00. I find such a purchase price to far exceed that which would be reasonable for basic transportation. While a 2004 Pontiac Montana may not be

14

considered a "luxury car" in the vernacular of the motor vehicle industry, Debtor's ownership of this vehicle under these financial circumstances is clearly excessive and reflects a failure to minimize expenses. *See Faish*, 72 F.3d at 307 (non-dischargeability request denied where debtor sought student loan discharge to enable her to buy a new car.)

Despite this excessive expenditure, the evidence suggests that even with a more reasonable car payment, Debtor would have difficulty maintaining monthly payments on all of her student loan debt. The unrebutted affidavits show that Debtor's monthly payments to MGA were $464.00 and to Sallie Mae were $65.49. While ECMC did not provide a figure for Debtor's monthly payment, the total amount of its claim, including interest ($19,834.40), suggests that the monthly payment amount would be approximately twice that due to Sallie Mae. Obviously, without records from the non-answering Defendants, I can make no findings regarding whether Debtor can afford to maintain monthly payments on the claims of those Defendants.[10] However, inasmuch as Debtor is a healthy young woman with a college degree who, in the past, found the resources to indulge in discretionary

---

[10] The courts are not in agreement regarding the question of whether repayment of one student loan may be an undue hardship to a debtor while repayment of another student loan would not. While the statutory text clearly does not state that a debt is dischargeable "to the extent" that repayment would impose an undue hardship, some courts have found the discretion to do so through application of 11 U.S.C. § 105(a) in the context of § 523(a)(8). *See In re Saxman*, 325 F.3d 1168 (9th Cir. 2003); *Tennessee Student Assistance Corp. v. Hornsby*, 144 F.3d 433 (6th Cir. 1998). The Third Circuit has not specifically address the issue, but in *Faish*, it reversed a District Court ruling that a student loan was partially dischargeable. In the instant case, Debtor has named multiple defendants but only three of them have filed Answers to her Complaint. The record is not entirely clear as to whether or not the Answering Defendants are, in fact, the holders of the total of Debtor's student loans. If they are not, then an Order granting summary judgment as to all defendants would give an unearned benefit to any defendant who has not filed an answer. Nonetheless, because in at least one case, *Faish*, the Third Circuit has refused to permit a partial discharge and because the statutory text appears to be plain, I conclude that Debtor's Complaint may be dismissed as against all defendants even though not all of them have requested summary judgment.

15

Case 1:07-ap-00179-MDF    Doc 38    Filed 09/16/08    Entered 09/17/08 08:50:55    Desc
Main Document    Page 15 of 18

consumer spending, it is difficult to perceive how forcing her to honor her student loan obligations would be "unconscionable." *See Matthews, supra.*

      **3.    If forced repayment is currently unconscionable, is Debtor's inability to pay likely to persist?**

Even if Debtor had been successful in rebutting the evidence regarding her current ability to pay, there is no genuine issue of material fact in this case regarding her ability to pay going forward. Under the second prong of the test, Debtor must prove that she will be unable to repay her student loans while maintaining a minimal standard of living for a significant portion of the loan repayment period. As noted by the Third Circuit in *Brightful*, this is a demanding test. *Brightful*, 267 F.3d at 328. "[I]t is not enough for [a debtor] to demonstrate that [she is] currently in financial straits; rather, [she] must prove 'a total incapacity . . . in the future to pay [her] debts for reasons not within [her] control." *Id.* (quoting *Faish*, 72 F.3d at 307). A debtor must demonstrate that it is unlikely that she will ever be able to repay the loans, *In re Ballard*, 60 B.R. 673, 675 (Bankr. W.D. Va. 1986), or, as the *Brightful* court stated more bluntly: "dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *Brightful*, 267 F.3d at 328 (citations omitted).

At deposition, Debtor was asked to state the reasons why she believed that her student loans should be discharged. Her impassioned response was that "I just feel like if I pay even what I can pay a month to each and every creditor that I have for the student loans, I'm just never, ever, ever going to be able to pay it off." (Dep. 95). Obviously, Debtor's perception of the extent of her debt cannot form the basis for a legal conclusion that it is, in fact, insurmountable. Again, while the evidence is inconclusive regarding her current ability to meet her student loan obligations and maintain a minimal standard of living, there is no evidence that any effort to meet these obligations

16

is destined for futility. Rather the evidence shows that Debtor is a healthy, intelligent young woman with a valuable degree from a well-respected institution of higher learning whose earning potential is thus considerable. Accordingly, even if Debtor were able to show a current inability to repay her loans, the existing record indicates that she could not prove that she will never be able to repay them.

### C.     *Dismissal of the case as to the Non-answering Defendants*

As indicated in the Procedural History and at footnote three, the docket lacks evidence that the Non-answering Defendants were served with a summons to provide them notice of this action. Under Fed. R. Bankr. P. 7004(j), "[i]f a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made . . . , the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party. . . ." Fed. R. Bankr. P. 7004(j). Accordingly, an order shall be entered giving Debtor ten days in which to request that the matter remain open as to the Non-answering Defendants. If no such request is filed, then the matter shall be dismissed without prejudice as to the Non-answering Defendants.

**Conclusion**

In summary, the pleadings, depositions, answers to interrogatories and affidavits in this case show that there is no genuine issue as to any material fact bearing on the issues of Debtor's future ability to repay her student loans, or her lack of any effort to repay them in the past. Therefore,

17

summary judgment will be granted in favor of Movants as to Debtors' Complaint for a declaration of dischargeability. An appropriate order will be issued.

By the Court,

*/s/ Mary D. France*
Bankruptcy Judge

Date: September 16, 2008

*This document is electronically signed and filed on the same date.*